AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
для the
Western District of Oklahoma

**FILED**
NOV 13 2020
CARMELITA REEDER SHIN
CLERK, U.S. DISTRICT COURT
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. M-20-563-P
)
a Samsung Model # SM-N976V, )
IMEI: 358645100368182 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference herein.

located in the   Western   District of   Oklahoma  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Dealing Firearms Without a License |
| 18 U.S.C. § 924(n) | Traveling Interstate to Deal Firearms Without a License |

The application is based on these facts:
See attached Affidavit, which is incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

JARED LOWE, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/13/20

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

GARY M. PURCELL, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jared H. Lowe, Special Agent (S/A) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), having been duly sworn, depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") located in Oklahoma City, Oklahoma. I have been employed with ATF since January 11, 2015. Prior to working as a Special Agent for the ATF, I was a police officer in the State of Oklahoma for approximately 10 years. As part of my duties as a Special Agent with ATF, I investigate criminal violations related to firearms trafficking and the illegal possession of firearms by prohibited persons. I have been involved in several investigations involving illegal firearms possession, as well as domestic and international firearms trafficking. I have received specialized training, and have developed knowledge from more experienced agents in investigating the illicit purchase, transportation, sale, possession, and trafficking of firearms in violation of 18 U.S.C. §§ 922(a)(1)(A), 922(g)(1)-(9), and 924(n).

2. I am submitting this Affidavit in support of a search warrant authorizing a search of one cellular telephone— a **Samsung Model Number SM-N976V, IMEI : 358645100368182,** (hereinafter **SUBJECT PHONE**) as further described in **Attachment A**, which is incorporated into this Affidavit by reference. The ATF in Oklahoma City has custody of the **SUBJECT**

**PHONE** in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant authorizing a search of the **SUBJECT PHONE** for the items specified in **Attachment B** hereto, wherever they may be found, and to seize all items in **Attachment B** as instrumentalities, fruits, and evidence of the crimes described below.

3. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

## BACKGROUND OF INVESTIGATION

4. On or about September 14, 2020, the ATF Oklahoma City Field Office received information regarding seven firearms that were recovered in Reynosa, Tamaulipas, Mexico. Five of the seven recovered firearms had a time-to-crime (TTC) of one week or less and the remaining two recovered firearms had a TTC of less than one year. The investigation revealed that R.P., a resident of Tecumseh, Oklahoma, which is located within the Western District of Oklahoma, originally purchased the seven firearms. Prior to making contact

2

with R.P., ATF Agents were able to obtain a list of firearms purchased by R.P. since January of 2019. During this time, R.P. has purchased approximately 221 firearms. Of the total 221 firearms, R.P. has purchased approximately 82 firearms since December of 2019.

5. On October 7, 2020, a consensual, non-custodial interview was conducted with R.P. at his place of work in the Oklahoma City area. During the interview, R.P. admitted to "straw purchasing" the seven recovered firearms on behalf of Jorge Luis **VILLARREAL**. R.P. stated that he has purchased and re-sold approximately 100 firearms in the past year to **VILLARREAL**. R.P. explained that he would typically purchase firearms online and have them shipped to a Federal Firearms Licensed ("FFL") dealer located in Shawnee, Oklahoma. When the firearms arrived at the FFL, R.P. would pay a transfer fee, complete the ATF Form 4473, and then take possession of the firearm. In dealing with **VILLARREAL,** R.P. explained that **VILLARREAL** would request specific makes, models, and calibers of firearms, and if R.P. did not already have the specific firearm requested, he would find the firearms online, purchase the firearms, pick them up at the FFF, and then re-sell them to **VILLARREAL.** R.P. admitted to purchasing these firearms with the intent of direct re-sale to **VILLARREAL.** R.P. stated that he and **VILLARREAL** had made these types of transactions almost monthly over the

3

past year, and the most recent transaction occurred approximately one month prior to R.P.'s interview with ATF Agents.

6. R.P. informed the agents that he had been in contact with **VILLARREAL** via the **SUBJECT PHONE**, primarily communicating via text messages. R.P. said **VILLARREAL** travels from Texas to the Oklahoma City area to collect the purchased firearms from him. **VILLARREAL** claimed that his co-workers like to purchase the firearms from him. R.P. described **VILLARREAL** as being organized and detail oriented regarding their transactions. R.P. said that **VILLARREAL** often made statements about which type of firearms were selling, and which type of firearms were harder to sell. Finally, **VILLARREAL** has asked R.P. to introduce him to other individuals willing to purchase firearms and re-sell them to **VILLARREAL**. At the conclusion of the interview, R.P. granted agents consent to search his cellular telephone. text messages, the information provided by R.P., such as where **VILLARREAL** lives, what firearms sell the best, and specific firearms attempting to be obtained by **VILLARREAL,** was verified by agents. Agents were also able to ascertain, via the text messages, where **VILLARREAL** has been purchasing firearms from R.P. since at least March 23, 2020.

7. A query of past and/or pending Federal Firearms License applications was conducted pertaining to **VILLARREAL**. ATF records show

no pending and/or previous applications for a license to deal firearms relating to **VILLARREAL**.

8. On October 27, 2020, with the assistance of R.P., **VILLARREAL** was introduced to an ATF Undercover agent where **VILLARREAL** began texting the ATF Undercover agent using the **SUBJECT PHONE**. The ATF Undercover agent was posing as a seller of firearms in the Oklahoma City area. Ultimately, **VILLARREAL** agreed to purchase twelve (12) firearms (pistols) from the ATF Undercover agent for approximately $5,800.00.

9. On October 28, 2020, ATF was granted a search warrant for GPS data relating to **VILLARREAL**'s cellular telephone. The GPS data is consistent with showing **VILLARREAL** located in the McAllen, Texas area. This GPS data was consistently "pinging" in the McAllen, Texas area during the time **VILLARREAL** was in contact with the ATF Undercover agent. This information was verified by ATF agents located in McAllen, Texas, who observed **VILLARREAL** coming and going from a residence located at 215 W. Albatross, Apartment "D", Pharr, Texas 78577.

10. The investigation also revealed that when **VILLARREAL** travels to the Oklahoma City area, he has met with at least one other individual, C.J., to purchase firearms. A consensual interview with C.J. indicated that **VILLARREAL** communicates with C.J. via the **SUBJECT PHONE**, primarily through text messages. Somewhat similar to R.P., C.J. stated that he would

purchase firearms he found online, primarily via Armslist.com, and then re-sell them to **VILLARREAL**. C.J. stated that he has met with **VILLARREAL** two or three times and sold **VILLARREAL** between 30 and 40 firearms. C.J. said **VILLARREAL** typically times his trips to Oklahoma City to coincide with local gun shows.

11.    On October 31, 2020, **VILLARREAL** met with and attempted to purchase twelve (12) firearms from an ATF Undercover agent in Oklahoma City, Oklahoma.  At the conclusion of the undercover operation, **VILLARREAL** was taken into custody by ATF. A search of **VILLARREAL's** person yielded a large amount of U.S. Currency and the **SUBJECT PHONE**. A search of **VILLARREAL's** rental vehicle yielded large bundles of U.S. Currency secreted within the factory dash area of the vehicle, a large bundle of U.S. Currency secreted within a backpack containing personal hygiene items belonging to **VILLARREAL**, and several factory firearm boxes and gun cleaning kits.

### INTERVIEW OF JORGE LUIS VILLARREAL

12.    An interview of **VILLARREAL** was conducted. Post-Miranda, **VILLARREAL** admitted to travelling from the McAllen, Texas area to Oklahoma City, Oklahoma with the intent to purchase twelve (12) firearms for $5,800.00 in U.S. Currency. **VILLARREAL** also admitted to purchasing

6

numerous firearms in and around the Oklahoma City, Oklahoma area since approximately January 2020. **VILLARREAL** admitted to re-selling the purchased firearms for profit at gun shows in Oklahoma and Texas. **VILLARREAL** further admitted to purchasing firearms in Oklahoma from R.P. and C.J., and then taking the firearms into Mexico to sell for a slightly larger profit. **VILLARREAL** admitted to taking approximately fifty-nine (59) firearms into Mexico for re-sale.

13. **VILLARREAL** was taken into custody by the ATF and transported to Logan County Jail. The **SUBJECT PHONE** and the U.S. Currency were seized by ATF and booked into the ATF - Oklahoma City Evidence Vault.

14. Based upon my training and experience, I am aware that individuals involved in trafficking of firearms often use cell phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of firearms. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of firearm trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos. This is particularly true in a case like this, where R.P. and C.J. have purchased such a sizeable amount of firearms on behalf of **VILLARREAL**. It is patent

7

that **VILLARREAL** was no typical firearms purchaser, and was therefore undoubtedly communicating with other purchasers and/or sellers, as well as unidentified individuals in Mexico as admitted during the interview, using cellular phones—a common tool of the trade for firearms traffickers.

15. Based on the above information, there is probable cause to believe that violations of Title 18, United States Code, Section 922(a)(1(A) and Title 18, United States Code, Section 924(n) have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **SUBJECT PHONE**. Therefore, I respectfully request that this Court issue a search warrant for the **SUBJECT PHONE**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

_____
JARED H. LOWE
Special Agent
Bureau of Alcohol, Tobacco, Firearms
And Explosives

SUBSCRIBED AND SWORN to before me this 13th day of November, 2020.

_____
GARY M. PURCELL
United States Magistrate Judge

# ATTACHMENT A

## DESCRIPTION OF DEVICE TO BE SEARCHED

A Samsung Model SM-N976V, IMEI: 358645100368182, found on the person of Jorge Luis Villarreal during an ATF Undercover operation on October 31, 2020 at 200 Bass Pro Drive, Oklahoma City, Oklahoma, and presently located at ATF Oklahoma City, 901 NE 122nd Street, Suite 200, Oklahoma City, Oklahoma.

## ATTACHMENT B

1.  All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 922(a)(1)(A) – dealing firearms without a license, and 18 U.S.C. § 924(n) – traveling interstate to deal firearms without a license.

    a. lists of customers, identities of co-conspirators or criminal associates and related identifying information;

    b. types, amounts, and prices of firearms as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information); and

    d. all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created

or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic or video form.